C.K. Lee, *to be admitted pro hac vice*
Email: cklee@leelitigation.com
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181

David Makman, Esq.
CA Bar No.: 178195
LAW OFFICES OF DAVID A. MAKMAN
655 Mariner's Island, Suite 306
San Mateo, CA 94404
Tel: 650-242-1560
Fax: 650-242-1547
Email: david@makmanlaw.com

*Attorneys for Plaintiffs and the Proposed Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JAMIE JOSLIN and COURTNEY DAVIS, on behalf of themselves and others similarly situated,<br><br>                            Plaintiffs,<br><br>v.<br><br>CLIF BAR & COMPANY<br><br>                          Defendant. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br><br>**JURY TRIAL DEMANDED** |

Plaintiffs JAMIE JOSLIN, and COURTNEY DAVIS, individually and on behalf of all other persons similarly situated, by and through their undersigned attorneys, pursuant to this Class Action Complaint against CLIF BAR & COMPANY, allege the following:

**NATURE OF THE ACTION**

1.      This is a consumer protection action arising out of deceptive and otherwise improper business practices that CLIF BAR & COMPANY, (hereinafter "Defendant"), engages in with respect to the labeling of their Clif Bar® White Chocolate Macadamia Nut Bar and Luna® White Chocolate Macadamia Bar (the "Product" or the "Products"). *See* **Exhibit A**. The Products are marketed extensively throughout the United States, numerous retail stores, and on Defendant's online websites.

2.      The Products are advertised and sold to mislead consumers into believing that the bars contain white chocolate, when they in fact do not. *See* **Exhibit B.** Accordingly, the Products violate the California and New York State laws with the same scope as the Federal Food Drug & Cosmetic Act ("FDCA"). Consumers are misled as to the content of the Products and the Products are misbranded.

3.      Plaintiffs and Class members viewed Defendant's misleading labels, and reasonably relied in substantial part on the representations that they contain real white chocolate. Plaintiffs and Class members were thereby deceived into purchasing a more inferior product than they had bargained for.

4.      Upon information and belief, Defendant continues to sell the misbranded Products.

5.      Plaintiffs bring this proposed consumer class action on behalf of themselves and all other persons nationwide, who from the applicable limitations period up to and including the present (the "Class Period"), purchased the Products for consumption and not for resale.

6.      During the Class Period, Defendant purposely manufactured, marketed and sold the mislabeled Products throughout the United States.

7.      Defendant violates statutes enacted in each of the fifty states and the District of Columbia that are designed to protect consumers against unfair, deceptive, fraudulent and unconscionable trade and business practices and false advertising. These statutes are:

*a.*      Alabama Deceptive Trade Practices Act, Ala. Statues Ann. § 8-19-1, *et seq.*;

*b.*     Alaska Unfair Trade Practices and Consumer Protection Act, Ak. Code § 45.50.471, *et seq.*;

*c.*     Arizona Consumer Fraud Act, Arizona Revised Statutes, § 44-1521, *et seq.*;

*d.*     Arkansas Deceptive Trade Practices Act, Ark. Code § 4-88-101, *et seq.*;

*e.*     California Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*, and California's Unfair Competition Law, Cal. Bus. & Prof Code § 17200, *et seq.*;

*f.*     Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-101, *et seq.*;

*g.*     Connecticut Unfair Trade Practices Act, Conn. Gen. Stat § 42-110a, *et seq.*;

*h.*     Delaware Deceptive Trade Practices Act, 6 Del. Code § 2511, *et seq.*;

i.     District of Columbia Consumer Protection Procedures Act, D.C. Code § 28 3901, *et seq.*;

*j.*     Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201, *et seq.*;

*k.*     Georgia Fair Business Practices Act, § 10-1-390 *et seq.*;

*l.*     Hawaii Unfair and Deceptive Practices Act, Hawaii Revised Statues § 480 1*, et seq.,* and Hawaii Uniform Deceptive Trade Practices Act, Hawaii Revised Statutes § 481A-1, *et seq.*;

*m.*     Idaho Consumer Protection Act, Idaho Code § 48-601, *et seq.*;

*n.*     Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1, *et seq.*;

*o.*     Indiana Deceptive Consumer Sales Act, Indiana Code Ann. § 24-5-0.5-0.1, *et seq.*;

*p.*     Iowa Consumer Fraud Act, Iowa Code § 714.16, *et seq.*;

*q.*     Kansas Consumer Protection Act, Kan. Stat. Ann § 50-626, *et seq.*;

*r.*     Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. § 367.110, *et seq.*, and the Kentucky Unfair Trade Practices Act, Ky. Rev. Stat. Ann § 365.020, *et seq.*;

*s.*     Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. Ann. § § 51:1401, *et seq.*;

*t.*     Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. § 205A, *et seq,,* and Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. 10, § 1211, *et seq.,*

*u.*     Maryland Consumer Protection Act, Md. Com. Law Code § 13-101, *et seq.*;

*v.*     Massachusetts Unfair and Deceptive Practices Act, Mass. Gen. Laws ch. 93A;

*w.*     Michigan Consumer Protection Act, § 445.901, *et seq.*;

*x.*     Minnesota Prevention of Consumer Fraud Act, Minn. Stat § 325F.68, *et seq.*, and Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.43, *et seq.*;

*y.*     Mississippi Consumer Protection Act, Miss. Code Ann. § 75-24-1, *et seq.*;

z.  Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et seq.;*

aa. Montana Unfair Trade Practices and Consumer Protection Act, Mont. Code § 30-14-101, *et seq.*;

bb. Nebraska Consumer Protection Act, Neb. Rev. Stat. § 59 1601, *et seq.,* and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-301, *et seq.*;

cc. Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. § 598.0903, *et seq.*;

dd. New Hampshire Consumer Protection Act, N.H. Rev. Stat. § 358-A:1, *et seq.*;

ee. New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8 1, *et seq.*;

ff. New Mexico Unfair Practices Act, N.M. Stat. Ann. § 57 12 1, *et seq.*;

gg. New York Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law § 349, *et seq.*;

hh. North Dakota Consumer Fraud Act, N.D. Cent. Code §§ 51 15 01, *et seq.*;

ii. North Carolina Unfair and Deceptive Trade Practices, North Carolina General Statutes § 75-1, *et seq.*;

jj. Ohio Deceptive Trade Practices Act, Ohio Rev. Code. Ann. § 4165.01. *et seq.*;

kk. Oklahoma Consumer Protection Act, Okla. Stat. 15 § 751, *et seq.*;

ll. Oregon Unfair Trade Practices Act, Rev. Stat § 646.605, *et seq.*;

mm. Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Penn. Stat. Ann. § 201-1, *et seq.*;

nn. Rhode Island Unfair Trade Practices and Consumer Protection Act, R.I. Gen. Laws § 6-13.1-1, *et seq.*;

oo. South Carolina Unfair Trade Practices Act, S.C. Code Laws § 39-5-10, *et seq.*;

pp. South Dakota's Deceptive Trade Practices and Consumer Protection Law, S.D. Codified Laws § 37 24 1, *et seq.*;

qq. Tennessee Trade Practices Act, Tennessee Code Annotated § 47-25-101, *et seq.*;

rr. Texas Stat. Ann. § 17.41, *et seq.,* Texas Deceptive Trade Practices Act, *et seq.*;

ss. Utah Unfair Practices Act, Utah Code Ann. § 13-5-1, *et seq.*;

tt. Vermont Consumer Fraud Act, Vt. Stat. Ann. tit.9, § 2451, *et seq.*;

uu. Virginia Consumer Protection Act, Virginia Code Ann. § 59.1-196, *et seq.*;

vv. Washington Consumer Fraud Act, Wash. Rev, Code § 19.86.010, *et seq.*;

ww. West Virginia Consumer Credit and Protection Act, West Virginia Code § 46A-6-101, *et seq.*;

xx. Wisconsin Deceptive Trade Practices Act, Wis. Stat. § 100. 18, *et seq.*;

*yy.*    Wyoming Consumer Protection Act, Wyoming Stat. Ann. § 40-12-101, *et seq.*

8.    Defendant has deceived Plaintiffs and other consumers nationwide by misbranding their Products, inducing Plaintiffs and Class members to reasonably rely on Defendant's misrepresentations, and purchase Products they would not have purchased otherwise. Defendant has collected millions of dollars from the sale of their Products, which they would not have otherwise earned, through these unfair and deceptive practices. Plaintiffs bring this action to stop Defendant's misleading practices.

9.    Plaintiffs do not seek to contest or enforce any state law that has requirements beyond those required by federal laws or regulations.

## JURISDICTION AND VENUE

10.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, because this is a class action, as defined by 28 U.S.C § 1332(d)(1)(B), in which a member of the putative class is a citizen of a different state than Defendant, and the amount in controversy exceeds the sum or value of $5,000,000, excluding interest and costs. *See* 28 U.S.C. § 1332(d)(2).

11.    The Court has personal jurisdiction over Defendant because their Products are designed, manufactured, advertised, marketed, distributed and sold throughout California State; Defendant engages in the wrongdoing alleged in this Complaint throughout the United States, including in California. Defendant is authorized to do business in California State. Defendant has sufficient minimum contacts with California and/or otherwise has intentionally availed itself of the markets in California, rendering the exercise of jurisdiction by the Court permissible under traditional notions of fair play and substantial justice. Moreover, Defendant engages in substantial and not isolated activity within California.  California is also Defendant's principal place of business.

12.    Venue is proper in this district pursuant to 28 U.S.C § 1391(a) and (b) because a substantial part of the events giving rise to Plaintiff JOSLIN'S claims occurred in this District, and Defendant is subject to personal jurisdiction in this District. Plaintiff JOSLIN

purchased Defendant's Products in Riverside, California. Moreover, Defendant distributes, advertises and sells the Products, which are the subject of the present Complaint, in this District.

**PARTIES**

*California Plaintiff*

13. On January 9, 2018, JAMIE JOSLIN, a resident of California, purchased a six-pack of the Luna® White Chocolate Macadamia Product in reliance on Defendant's representations that the bars contain white chocolate. Plaintiff JOSLIN purchased her Product for the premium price of $5.99 at a Target in Riverside California. The White Chocolate Chip Macadamia Nut Bar Product was labeled "White Chocolate Macadamia". The phrase "White Chocolate" explicitly represents that the Product contains white chocolate, but in fact it contains inferior confectionary ingredients that are not white chocolate at all. Plaintiff JOSLIN was thereby denied the benefit of her bargain. Should Plaintiff JOSLIN encounter the Product in the future, she could not rely on the truthfulness of the packaging, absent corrective changes to the packaging.

*New York Plaintiff*

14. On March 29, 2018, COURTNEY DAVIS, a resident of New York, purchased a Clif Bar® White Chocolate Macadamia Nut Bar Product at a Duane Reade in Manhattan in reliance on label representations that the bar contains white chocolate. Plaintiff DAVIS purchased her Product for the premium price of $1.99. The phrase "White Chocolate Macadamia Nut" implicitly promises to consumers that the Product contains white chocolate when it in fact does not. Courtney was injured when she was denied the benefit of her bargain. Should Plaintiff DAVIS encounter the Product in the future, she could not rely on the truthfulness of the packaging, absent corrective changes to the packaging.

*Defendant*

15.     CLIF BAR & COMPANY is a corporation organized under the laws of California with its principal place of business at 1451 66th Street, Emeryville, CA 94608. Its registered agent for service of process is Bruce Lymburn at the same address.

16.     Defendant manufactures, packages, distributes, advertises, markets, and sells the misbranded Products to millions of customers nationwide, including New York and California.

17.     Defendant distributes, markets and sells its Products throughout the fifty states and the District of Columbia. The labeling, packaging, and advertising for the Products, relied upon by Plaintiffs, were prepared and/or approved by Defendant and its agents, and were disseminated by Defendant and its agents through advertising containing the misrepresentations alleged herein. Such labeling, packaging and advertising were designed to encourage consumers to purchase the Products, and misled the reasonable consumer, i.e. Plaintiffs and the Class, into purchasing the Products. Defendant owns, markets and distributes the Products, and creates and/or authorizes the unlawful, fraudulent, unfair, misleading and/or deceptive labeling, packaging and advertising for the Products.

## **FACTUAL ALLEGATIONS**

### **Defendant's Products Do Not Contain Real White Chocolate**

18.     "White chocolate" signifies only one thing: a confection that contains cocoa butter, dairy ingredients, and a sweetener.[1] "White chocolate" has always colloquially identified a product with these ingredients.

The FDA defines white chocolate as follows:

(a) Description. (1) White chocolate is the solid or semiplastic food prepared by intimately mixing and grinding cacao fat with one or more of the optional dairy ingredients specified in paragraph (b)(2) of this section and one or more

---

[1] White chocolate may also include other ingredients such flavorings or an emulsifier to hold it together. White chocolate does not include the non-fat solids of cacao beans.

optional nutritive carbohydrate sweeteners and may contain one or more of the other optional ingredients specified in paragraph (b) of this section. White chocolate shall be free of coloring material.

[b](2) Dairy ingredients:

(i) Cream, milkfat, butter;

(ii) Milk, dry whole milk, concentrated milk, evaporated milk, sweetened condensed milk;

(iii) Skim milk, concentrated skim milk, evaporated skim milk, sweetened condensed skim milk, nonfat dry milk;

(iv) Concentrated buttermilk, dried buttermilk; and

(v) Malted milk;

21 CFR § 163.124.

19.     Real white chocolate's flavor is partially imparted by milkfat. Accordingly, U.S.,[2] Canadian,[3] and European[4] regulators all define white chocolate as having at least 3.5% milkfat. The imitation white chocolate in the Products do not have milkfat or any of the specified ingredients in section (b)(2), as required.

**Federal Law Prohibits Misbranded Foods Such as Defendant's Products**

20.     All Federal law, agency regulation, and state law identically prohibit Defendant's misleading labeling practices.

21.     Under the FDCA, 21 U.S.C. § 343(c), a food shall be deemed to be misbranded "[i]f it is an imitation of another food, unless its label bears, in type of uniform size and prominence, the word "imitation" and, immediately thereafter, the name of the food imitated." The Products are misbranded regardless of whether or not Defendant intended to mislead consumers: "FDA advises that the term "misleading" does not require any clear implication regarding intent." 58 FR 64123, 64128.

---

[2] 21 CFR § 163.124(a)(2).
[3] C.R.C., c. 870, Section B.04.009(a)(iii).
[4] Directive 2000/36/EC of the European Parliament and of the Council of 23 June 2000 relating to cocoa and chocolate products intended for human consumption, Annex I, A(6).

**State Laws Mirror and Incorporate Federal Law and FDA Regulations**

22.     Food labeling laws and regulations of the fifty states and the District of Columbia impose requirements which mirror and incorporate federal law.

23.     The Sherman Law prohibits misleading food labeling. It imposes the same standards as federal law, including the Federal Standard for "white chocolate", which it incorporates:

> Any food is misbranded if it purports to be, or is represented as, a food for which a definition and standard of identity has been established under Section 110505 and the label fails to bear the name of the food specified in the standard or otherwise fails to conform to the definition and standard.

Cal. Health & Safety Code § 110710.

24.     The Sherman Law explicitly incorporates the same standards as FDA regulations. *See* §§110100 and 110380. The Sherman Law's various provisions prohibit every aspect of Clif Bar and Company's mislabeling of the Products, including their manufacture, distribution, marketing and sale, as follows:

- § 110385. "It is unlawful for any person to distribute in commerce any food . . . if its packaging or labeling does not conform to the provisions of this article or to regulations adopted pursuant to this article.";
- § 110390, "It is unlawful for any person to disseminate any false advertisement of any food . . . . An advertisement is false if it is false or misleading in any particular.";
- § 110395, "It is unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food . . . that is falsely advertised.";
- § 110398, "It is unlawful for any person to advertise any food, drug, device, or cosmetic that is adulterated or misbranded.";
- § 110400, "It is unlawful for any person to receive in commerce any food . . . that is falsely advertised or to deliver or proffer for delivery any such food . . . .";
- § 110760 "It is unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food that is misbranded.";
- § 110765, "It is unlawful for any person to misbrand any food."; and
- § 110770, "It is unlawful for any person to receive in commerce any food that is misbranded or to deliver or proffer for delivery any such food.".

25.     Congruently, New York State law broadly prohibits the misbranding of food in language identical to that found in regulations promulgated pursuant to the FDCA § 403, 21 U.S.C. 343. Under New York Agm. Law § 201, the law specifically provides that "[f]ood shall be deemed to be misbranded …If it is an imitation of another food, unless its label bears the word "imitation" and immediately thereafter the name of the food imitated in type of uniform size and equal prominence, followed by a statement showing the constituents thereof."

26.     Courts have noted the incorporation of FDA regulations into New York law in evaluating claims brought under NY GBL § 349. *See Ackerman v. Coca-Cola Co*., No. CV-09-0395 (JG) (RML), 2010 U.S. Dist. LEXIS 73156, at *13 (E.D.N.Y. July 21, 2010) ("New York's Agriculture and Marketing law similarly provides in relevant part that food shall be deemed misbranded '[i]f its labeling is false or misleading in any particular, and incorporates the FDCA's labeling provisions."); *Izquierdo v. Mondelez Int'l, Inc.*, No. 16-cv-04697 (CM), 2016 U.S. Dist. LEXIS 149795, at *11 (S.D.N.Y. Oct. 26, 2016) ("Here [in a slack-fill case brought under NY GBL § 349], New York law expressly incorporates the standard imposed by the FDCA."); *N. Am. Olive Oil Ass'n v. Kangadis Food Inc*., 962 F. Supp. 2d 514, 519 (S.D.N.Y. 2013) (evaluating claims under New York Gen. Bus. Law §§ 349 and 350 and finding that "New York law deems any product or label that fails to conform to [New York Agm. Law] definitions 'adulterated' or 'misbranded,' and thus unlawful.").

27.     New York Agm. Law § 201 specifically provides that "[f]ood shall be deemed to be misbranded … If it is an imitation of another food, unless its label bears the word "imitation" and immediately thereafter the name of the food imitated in type of uniform size and equal prominence, followed by a statement showing the constituents thereof" Moreover, Part 259.1 of Title 1 of the New York Codes, Rules and Regulations of the State of New York (1 NYCRR § 259.1), incorporates by reference the regulatory requirements for food labeling under the FDCA:

For the purpose of the enforcement of article 17 of the Agriculture and Markets Law, and except where in conflict with the statutes of this State or with rules and regulations promulgated by the commissioner, the commissioner hereby adopts the current regulations as they appear in title 21 of the *Code of Federal Regulations* (revised as of April 1, 2013) … in the area of food packaging and labeling as follows: … (2) Part 100 of title 21 of the *Code of Federal Regulations* [21 C.F.R. 100 *et seq.*], containing Federal definitions and standards for food packaging and labeling *General* at pages 5-10….

1 NYCRR § 259.1(a)(2).

### Defendant's Misleading Packaging Practices Would Deceive, be Material to, and be Relied Upon By, a Reasonable Consumer

28.   Defendant's misleading packaging practices were material to, and were relied upon, by Plaintiffs and the Class. These practices would also be material to, and by relied upon by, a reasonable consumer, since reasonable consumers naturally attach considerable importance to the quality of the product they believe they are receiving.

29.   FDA rules concerning white chocolate are not obscure regulations of no concern to anyone but the regulators.  On the contrary, consumers rely on these regulations to assure that they are purchasing what they are led to believe they are purchasing.  Since white chocolate does not contain the cacao solids that impart chocolate with its flavor and which consumers normally associate with chocolate, consumers rely on the FDA to assure that white chocolate more closely resembles what they know as chocolate.

30.   These expectations are confirmed by numerous culinary experts:

Cocoa butter on its own doesn't taste very good, so it's mixed with milk solids, milk fat, sugar, and vanilla to create white chocolate as we know i[t]. In the United States, the FDA says that in order to be labeled as such, white chocolate must be (by weight) at least 20% cocoa butter, 14% total milk solids, and 3.5% milk fat, and no more than 55% sugar or other sweeteners.

Gwen Watson, *GourmetGiftBaskets.com*[5]

---

[5] https://www.gourmetgiftbaskets.com/Blog/post/white-chocolate-isnt-really-chocolate.aspx

And while not all white chocolates are created equal—some people claim that there are artisan styles that are actually quite tasty—the FDA had to put a standard of identity in place for white chocolate in 2004 to prevent manufacturers from making the stuff even more fake with vegetable oils and other gross ingredients. So whether you get the crappy white stuff or the supposedly nicer ivory-colored stuff (you'll never see me with either), it must contain at least 20 percent cocoa butter, 14 percent milk solids, 3.5 percent milk fat, and no more than 55 percent sugar or other sweeteners.

Gabriel Van Tassel, myrecipes.com[6]

Not only does white chocolate have a different production process, it also does not possess the antioxidant properties of chocolate.  It is also lacking in the other defining ingredients of chocolate such as thiamine, riboflavin, theobromine and phenylethylamine.  It also only has trace amounts of caffeine.

Due to the drastic difference in the two confections there are separate regulations that define what may be sold as "white chocolate".  Since 2004 the United States has held white chocolate to the standards that it must be (by weight) 20% cocoa butter, 14% total milk solids, and 3.5% milk fat.  It can contain no more that 55% sugar or other sweeteners.

Sinfulsweetspgh.com[7]

31.    Plaintiffs and the Class did not know, and had no reason to know, that the Products did not contain real white chocolate. Had Plaintiffs and Class members known Defendant's Products did not contain real white chocolate, they would not have bought the Products.

32.    Defendant's Product labeling as alleged herein is deceptive and misleading and was designed to increase sales of the Products. Defendant's misrepresentations are part of its systematic Product labeling and packaging practices.

---

[6] http://www.myrecipes.com/extracrispy/what-is-white-chocolate
[7] https://www.sinfulsweetspgh.com/white-chocolate-the-non-chocolate/

**Plaintiffs and the Class Were Injured as a Result of Defendant's Misrepresentations**

33.     As shown above, the presence of milkfat and other dairy products is much of what gives white chocolate its value in the eyes of reasonable consumers.

34.     Plaintiffs and Class members were thus injured when they paid the full price of the Products and received an inferior Product than what was represented to them by Defendant.

35.     Plaintiffs were thus deprived of the benefit of their bargains, injured in an amount up to the purchase price, to be determined by expert testimony at trial.

## CLASS ACTION ALLEGATIONS

36.     Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following class:

> All persons or entities in the United States who made retail purchases of Products during the applicable limitations period, and/or such subclasses as the Court may deem appropriate ("the Nationwide Class").

37.     In the alternative, Plaintiff JOSLIN seeks to represent a class consisting of:

> All persons or entities who made retail purchases of the Products in California during the applicable limitations period, and/or such subclasses as the Court may deem appropriate ("the California Class").

38.     Also in the alternative, Plaintiff DAVIS seeks to represent a class consisting of:

> All persons or entities who made retail purchases of the Products in New York during the applicable limitations period, and/or such subclasses as the Court may deem appropriate ("the New York Class").

39.     The proposed Classes exclude current and former officers and directors of Defendant, members of the immediate families of the officers and directors of Defendant, Defendant's legal representatives, heirs, successors, assigns, and any entity in which they

have or have had a controlling interest, and the judicial officer to whom this lawsuit is assigned.

40. The members of the Classes are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiffs at this time and can only be ascertained through the appropriate discovery, Plaintiffs believe that there are thousands of members in the proposed Classes. Other members of the Classes may be identified from records maintained by Defendant and may be notified of the pendency of this action by mail, or by advertisement, using the form of notice similar to that customarily used in class actions such as this.

41. Plaintiffs' claims are typical of those of the Class members because Plaintiffs and the other Class members sustained damages arising out of the same wrongful conduct, as detailed herein. Plaintiffs and other Class members purchased Defendant's Products and sustained similar injuries arising out of Defendant's conduct in violation of Federal law, California law, New York law, and the laws of the other 48 states and the District of Columbia. Defendant's unlawful, unfair, and fraudulent business practices create the same consumer confusion and deception, and thus the same injury, irrespective of where they occurred or were experienced. The injuries of the Classes were caused directly by Defendant's unfair and deceptive practices. In addition, the factual underpinning of Defendant's misconduct is common to all Class members and represents a common thread of misconduct resulting in injury to all members of the Classes. Plaintiffs' claims arise from the same practices and course of conduct that give rise to the claims of the members of the Classes and are based on the same legal theories. Plaintiffs will fairly and adequately protect the interests of the members of the Classes in that Plaintiffs have no interests antagonistic to those of the other members of the Classes. Plaintiffs have retained experienced and competent counsel.

42. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the damages sustained by individual Class members may be relatively small, the expense and burden of individual litigation make it

impracticable for the members of the Classes to individually seek redress for the wrongful conduct alleged herein. If Class treatment of these claims were not available, Defendant would unfairly receive millions of dollars or more in improper charges.

43.   Common questions of law and fact exist as to all members of the Classes and predominate over any questions solely affecting individual members of the Classes. Among the common questions of law fact to the Classes are:

   i.   Whether Defendant labeled, packaged, marketed, advertised and/or sold Products to Plaintiffs and Class members, using false, misleading and/or deceptive packaging and labeling;

   ii.   Whether Defendant's actions constitute violations of the consumer protection laws of California, New York, and the other states and the District of Columbia;

   iii.   Whether Defendant omitted and/or misrepresented material facts in connection with the labeling, ingredients, marketing, advertising and/or sale of Products;

   iv.   Whether Defendant's labeling, packaging, marketing, advertising and/or selling of Products constituted an unfair, unlawful or fraudulent practice;

   v.   Whether, and to what extent, injunctive relief should be imposed on Defendant to prevent such conduct in the future;

   vi.   Whether the members of the Classes have sustained damages as a result of Defendant's wrongful conduct;

   vii.   The appropriate measure of damages and/or other relief; and

   viii.   Whether Defendant should be enjoined from continuing their unlawful practices.

44.   The Classes are readily definable, and prosecution of this action as a Class action will reduce the possibility of repetitious litigation. Plaintiffs know of no difficulty which will be encountered in the management of this litigation which would preclude its maintenance as a Class action.

45.   A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The damages suffered by any individual class member are too small to make it economically feasible for an individual class member to prosecute a

separate action, and it is desirable for judicial efficiency to concentrate the litigation of the claims in this forum. Furthermore, the adjudication of this controversy through a class action will avoid the potentially inconsistent and conflicting adjudications of the claims asserted herein. There will be no difficulty in the management of this action as a class action.

46.     The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(2) are met, as Defendant has acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive or equitable relief with respect to the Classes as a whole.

47.     The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(3) are met, as questions of law or fact common to the Classes predominate over any questions affecting only individual members and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

48.     The prosecution of separate actions by members of the Classes would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. Additionally, individual actions may be dispositive of the interest of all members of the Class, although certain Class members are not parties to such actions.

49.     Defendant's conduct is generally applicable to the Classes as a whole and Plaintiffs seek, *inter alia*, equitable remedies with respect to the Classes as a whole. As such, Defendant's systematic policies and practices make declaratory relief with respect to the Class as a whole appropriate.

## CAUSES OF ACTION

### COUNT I.

### VIOLATIONS OF CALIFORNIA'S CONSUMER LEGAL REMEDIES ACT, (Cal. Civ. Code § 1750, *et seq.*)

**(brought individually and on behalf of the Nationwide Class, in conjunction with the substantively similar consumer protection laws of the other states and the District of Columbia to the extent California law is inapplicable to out-of-state Class members, or, in the alternative, on behalf of the California Class)**

50.    Plaintiffs reallege and incorporate herein by reference the allegations contained in all preceding paragraphs, and further allege as follows:

51.    Plaintiffs brings this claim individually and on behalf of the other members of the Nationwide Class for Defendant's violations of California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*, including § 1761(d).

52.    Alternatively, should the Court not certify Plaintiffs' proposed Nationwide Class, Plaintiff JOSLIN brings this claim individually and on behalf of the members of the California Class for Defendant's violations of California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*, including § 1761(d).

53.    Plaintiffs and members of the Nationwide Class and California Class are consumers who purchased the Products for personal, family or household purposes. Plaintiffs and members of the Nationwide Class and California Class are "consumers" as that term is defined by the CLRA in Cal. Civ. Code § 1761(d). Plaintiffs and the members of the Nationwide Class and California Class are not sophisticated experts with independent knowledge of corporate branding, labeling and marketing practices.

54.    The Products that Plaintiffs and other members of the Nationwide Class and California Class purchased from Defendant were "goods" within the meaning of Cal. Civ. Code § 1761(a).

55.     Defendant's actions, representations, and conduct violated, and continue to violate the CLRA, because they extend to transactions that intended to result, or which have resulted in, the sale of goods to consumers.

56.     California's Consumers Legal Remedies Act, Cal. Civ. Code § 1770(a)(5), prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have." By engaging in the conduct set forth herein, Defendant violated and continue to violate Section 1770(a)(5) of the CLRA, because Defendant's conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices, in that it misrepresents that the Products have quantities which they do not have.

57.     Cal. Civ. Code § 1770(a)(9) further prohibits "[a]dvertising goods or services with intent not to sell them as advertised." By engaging in the conduct set forth herein, Defendant violated and continue to violate Section 1770(a)(9), because Defendant's conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices, in that it advertises goods with the intent not to sell the goods as advertised.

58.     Plaintiffs and the members of the Nationwide Class and California Class are not sophisticated experts about the corporate branding, labeling and packaging practices. Plaintiffs and members of the Nationwide Class and California Class acted reasonably when they purchased the Products based on their belief that Defendant's representations were true and lawful.

59.     Plaintiffs and members of the Nationwide Class and California Class suffered injuries caused by Defendant because (a) they were denied the benefit of their bargain due to Defendant's misrepresentations and deceptive mislabeling; (b) the Products did not have the qualities they promised, and (c) they would not have purchased the Products on the same terms absent Defendant's illegal and misleading conduct as set forth herein, or if the true facts were known concerning Defendant's representations.

60.     On or about February 7, 2018, prior to filing this action, a CLRA notice letter was served on Defendant which complies in all respects with California Civil Code § 1782(a). Plaintiff JOSLIN sent Defendant on behalf of herself and the proposed Nationwide Class and California Class, a letter via certified mail with return receipt requested. The letter advised Defendant that they are in violation of the CLRA and demanded that they cease and desist from such violations and make full restitution by refunding the monies received therefrom.  *See* **Exhibit C**.

61.     Wherefore, Plaintiffs seek damages, restitution, and injunctive relief for these violations of the CLRA.

## COUNT II.

### VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW,
**(California Business & Professions Code § 17200,** *et seq.***)**

**(brought individually and on behalf of the Nationwide Class, in conjunction with the substantively similar consumer protection laws of the other states and the District of Columbia to the extent California law is inapplicable to out-of-state Class members, or, in the alternative, on behalf of the California Class).**

62.     Plaintiffs reallege and incorporate herein by reference the allegations contained in all preceding paragraphs, and further allege as follows:

63.     Plaintiffs bring this claim individually and on behalf of the other members of the Nationwide Class for Defendant's violations of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*

64.     Alternatively, should the Court not certify Plaintiffs' proposed Nationwide Class, Plaintiff JOSLIN brings this claim individually and on behalf of the members of the California Class for Defendant's violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*

65.    The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising."

66.    Defendant violates federal and California law because the Products do not contain white chocolate.

67.    Defendant's business practices, described herein, violates the "unlawful" prong of the UCL by violating Section 403(r) of the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. 343(d), 21 CFR § 163.124(a)(2), California Health & Safety Code § 110690, the CLRA, and other applicable law as described herein.

68.    Defendant's business practices, described herein, violated the "unfair" prong of the UCL in that their conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the gravity of the conduct outweighs any alleged benefits. Defendant's advertising is of no benefit to consumers. And its deceptive advertising offends the public policy advanced by the FDCA to ensure that "foods are safe, wholesome, sanitary, and properly labeled." 21 U.S.C. § 393(b)(2)(A).

69.    Defendant violated and continues to violate the "fraudulent" prong of the UCL by misleading Plaintiffs and members of the Nationwide Class and California Class into believing that the Products contain white chocolate when they do not.

70.    Plaintiffs and members of the Nationwide Class and California Class are not sophisticated experts about the corporate branding, labeling, and packaging practices of the Products. Plaintiffs and members of the Nationwide Class and California Class acted reasonably when they purchased the Products based on their belief that Defendant's representations were true and lawful.

71.    Plaintiffs and members of the Nationwide Class and California Class lost money or property as a result of Defendant's UCL violations because (a) they were denied the benefit of their bargain due to Defendant's mislabeling and misrepresentations; (b) the Products did not have the characteristics promised, and (c) they would not have purchased

the Products on the same terms absent Defendant's illegal and misleading conduct as set forth herein, or if the true facts were known concerning Defendant's representations.

## COUNT III.

**VIOLATION OF CALIFORNIA'S FALSE ADVERTISING LAW,**
**(California Business & Professions Code § 17500, *et seq.*)**
**(Brought Individually and on behalf of the Nationwide Class, in conjunction with the substantively similar consumer protection laws of the other states and the District of Columbia to the extent California law is inapplicable to out-of-state Class members, or, in the alternative, on behalf of the California Class).**

72.     Plaintiffs reallege and incorporate herein by reference the allegations contained in all preceding paragraphs, and further allege as follows:

73.     Plaintiffs brings this claim individually and on behalf of the other members of the Nationwide Class for Defendant's violations of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, *et seq.*

74.     Alternatively, should the Court not certify Plaintiffs' proposed Nationwide Class, Plaintiff JOSLIN brings this claim individually and on behalf of the members of the California Class for Defendant's violations of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, *et seq.*

75.     Under the FAL, the State of California makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, … in any advertising device … or in any other manner or means whatever, including over the Internet, any statement, concerning … personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

76.     Defendant engages in a scheme of offering misbranded Products for sale to Plaintiffs and members of the Nationwide Class and California Class by way of labeling the Products as being white chocolate Products when they are not. Such practice

misrepresents the ingredients and quality of the misbranded Products. Defendant's advertisements and inducements were made in California and come within the definition of advertising as contained in Bus. & Prof. Code § 17500, *et seq*. in that the product packaging was intended as inducements to purchase Defendant's Products. Defendant knew that these statements were unauthorized, inaccurate, and misleading.

77.   Defendant violated federal and California law because the Products are advertised as containing white chocolate when they in fact do not.

78.   Defendant violated § 17500, *et seq*. by misleading Plaintiffs and the members of the Nationwide Class and California Class into believing that the Products contain white chocolate.

79.   Defendant knew or should have known, through the exercise of reasonable care that the Products were and continue to be misbranded, and that their representations about the ingredients and quality of the Products were untrue and misleading.

80.   Plaintiffs and the members of the Nationwide Class and California Class lost money or property as a result of Defendant's FAL violations because (a) they were denied the benefit of their bargain due to Defendant's misrepresentations; (b) the Products did not have the characteristics, benefits, or qualities promised, and (c) they would not have purchased the Products on the same terms absent Defendant's illegal and misleading conduct as set forth herein, or if the true facts were known concerning Defendant's representations.

# COUNT IV.

## INJUNCTION FOR VIOLATIONS OF THE NEW YORK DECEPTIVE AND UNFAIR TRADE PRACTICES ACT
### (New York General Business Law § 349)
### (Brought Individually and on Behalf of the New York Class)

81.     Plaintiff DAVIS realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

82.     Plaintiff DAVIS brings this claim individually and on behalf of the other members of the New York Class for an injunction for violations of New York's Deceptive Acts or Practices Law, General Business Law ("NY GBL") § 349.

83.     NY GBL § 349 provides that "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are . . . unlawful."

84.     Under the New York Gen. Bus. Code § 349, it is not necessary to prove justifiable reliance. ("To the extent that the Appellate Division order imposed a reliance requirement on General Business Law [§] 349 . . . claims, it was error. Justifiable reliance by the plaintiff is not an element of the statutory claim." *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941 (N.Y. App. Div. 2012) (internal citations omitted)).

85.     The practices employed by Defendant, whereby Defendant advertises, promotes, markets and sells their Products as having white chocolate, are unfair, deceptive, misleading and are in violation of the NY GBL § 349. Moreover, New York State law broadly prohibits the misbranding of foods in language identical to that found in regulations promulgated pursuant to the FDCA § 403, 29 U.S.C. 343(d). Under New York Agm. Law § 201, "[f]ood shall be deemed to be misbranded … If it is an imitation of another food, unless its label bears the word "imitation" and immediately thereafter the name of the food imitated in type of uniform size and equal prominence, followed by a statement showing the constituents thereof."

86.     Any person who has been injured by reason of any violation of the NY GBL § 349 may bring an action in their own name to enjoin such unlawful act or practice, an action to recover their actual damages or fifty dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the Defendant willfully or knowingly violated this section. The court may award reasonable attorney's fees to a prevailing plaintiff.

87.     The practices employed by Defendant, in which they advertise, promote, and market their Products as containing "White Chocolate" are unfair, deceptive, misleading, and in violation of the NY GBL § 349.

88.     The foregoing deceptive acts and practices were directed at consumers.

89.     Defendant should be enjoined from marketing the Products as having "White Chocolate" pursuant to NY GBL § 349.

90.     Plaintiffs, on behalf of themselves and all others similarly situated, respectfully demand a judgment enjoining Defendant's conduct, awarding costs of this proceeding and attorneys' fees, as provided by NY GBL § 349, and such other relief as this Court deems just and proper.

## COUNT V.

### DAMAGES FOR VIOLATIONS OF THE NEW YORK DECEPTIVE AND UNFAIR TRADE PRACTICES ACT
**(New York General Business Law § 349)**
**(Brought Individually and on Behalf of the New York Class)**

91.     Plaintiff DAVIS realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

92.     Plaintiff DAVIS brings this claim individually and on behalf of the other members of the New York Class for violations of NY GBL § 349.

93.     Any person who has been injured by reason of any violation of NY GBL § 349 may bring an action in their own name to enjoin such unlawful act or practice, an action to recover her actual damages or fifty dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the defendant willfully or knowingly violated this section. The court may award reasonable attorney's fees to a prevailing plaintiff.

94.     By the acts and conduct alleged herein, Defendant committed unfair or deceptive acts and practices by misbranding their Products as white chocolate Products, when they do not contain any white chocolate.

95.     The practices employed by Defendant, whereby Defendant advertises, promotes, markets and sells their Products as containing white chocolate, are unfair, deceptive and misleading and are in violation of the NY GBL § 349, New York Agm. Law § 201 and the FDCA, 21 U.S.C. § 343(c) in that said Products are misbranded.

96.     The foregoing deceptive acts and practices were directed at consumers.

97.     Plaintiff DAVIS and the other New York Class members suffered a loss as a result of Defendant's deceptive and unfair trade acts. Specifically, as a result of Defendant's deceptive and unfair acts and practices, Plaintiff DAVIS and the other New York Class members suffered monetary losses associated with the purchase of Products, i.e., receiving an inferior Products than the ones they agreed to purchase. In order for Plaintiff DAVIS and New York Class members to be made whole, they need to receive the value full amount that they paid for the Products.

1

**COUNT VI.**

2

**DAMAGES AND INJUCTIVE RELIEF FOR VIOLATIONS OF NEW YORK**

3

**GENERAL BUSINESS LAW §§ 350 AND 350-a(1)**
**(FALSE ADVERTISING)**

4

**(brought individually and on behalf of the New York Class)**

5

98.    This claim is brought on behalf of Plaintiff DAVIS and members of the New

6

York Class against Defendant.

7

99.    Plaintiff DAVIS and members of the New York Class reallege and incorporate

8

by reference the allegations contained in all preceding paragraphs, and further allege as

9

follows:

10

100.   Defendant is engaged in the "conduct of … business, trade or commerce"

11

within the meaning of N.Y. Gen. Bus. Law § 350.

12

101.   New York Gen. Bus. Law § 350 makes unlawful "[f]alse advertising in the

13

conduct of any business, trade or commerce." False advertising includes "advertising,

14

including labeling, of a commodity … if such advertising is misleading in a material

15

respect," taking into account "the extent to which the advertising fails to reveal facts

16

material in light of … representations [made] with respect to the commodity …" N.Y. Gen.

17

Bus. Law § 350-a(1).

18

102.   Defendant caused to be made or disseminated through New York, through

19

advertising, marketing and other publications, statements that were untrue or misleading,

20

and that were known, or which by the exercise of reasonable care should have been known

21

to Defendant, to be untrue and misleading to consumers and the New York Class.

22

103.   Defendant's affirmative misrepresentations and misrepresentations by way of

23

omission, as described in this Complaint, were material and substantially uniform in

24

content, presentation, and impact upon consumers at large. Consumers purchasing the

25

products were and continue to be exposed to Defendant's material misrepresentations.

26

27

28

104.   Defendant violates N.Y. Gen. Bus. Law § 350 because the misrepresentations and/or omissions regarding the Products, as set forth above, were material and likely to deceive a reasonable consumer.

105.   Plaintiff DAVIS and members of the New York Class have suffered an injury, including the loss of money or property, as a result of Defendant's false and misleading advertising. In purchasing the Defective Products, Plaintiff DAVIS and members of the New York Class relied on the misrepresentations and/or omissions relating to the quality of the Products. Those representations were false and/or misleading because the Products were advertised as white chocolate Products but did not contain white chocolate, denying Plaintiff DAVIS and the members of the New York Class the benefit of their bargain.

106.   Pursuant to N.Y. Gen. Bus. Law § 350-e, Plaintiff DAVIS and members of the New York Class seek monetary damages (including actual damages and minimum, punitive, or treble and/or statutory damages pursuant to GBL § 350-a(1)), injunctive relief, restitution and disgorgement of all monies obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

## COUNT VII
## COMMON LAW FRAUD

**(brought individually and on behalf of the Nationwide Class under California common law or, in the alternative, on behalf of the New York and California Class under those states' respective laws)**

107.   Plaintiffs reallege and incorporate herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

108.   Defendant intentionally made materially false and misleading claims through its representations that the Products contain white chocolate, intending that Plaintiffs and the Class rely on them.

109.   Plaintiffs and Class members reasonably relied on Defendant's false and misleading representations and omissions. They did not know, and had no reason to know,

the truth about the Products as the time they purchased them. They would not have purchased the Products had they known the truth—viz., that they do not contain white chocolate.

110. Plaintiffs and Class members have been injured as a result of Defendant's fraudulent conduct and must be compensated in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, pray for relief and judgment against Defendant as follows:

A.   For an Order certifying the Nationwide Class and under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as representatives of the Class and Plaintiffs' attorneys as Class counsel to represent members of the Class;

B.   In the alternative, for an Order certifying the California Class and appointing Plaintiff JOSLIN as Class representative and Plaintiff JOSLIN's attorney as Class counsel;

C.   Also in the alternative, for an Order certifying the New York Class and appointing Plaintiff DAVIS as Class representative and Plaintiff DAVIS's attorney as Class counsel;

D.   For an Order declaring that Defendant's conduct violates the statutes referenced herein;

E.   For an Order finding in favor of Plaintiffs and members of the Class;

F.   For compensatory and punitive damages in amounts to be determined by the Court and/or jury;

G.   For prejudgment interest on all amounts awarded;

H.   For an Order of restitution and all other forms of equitable monetary relief;

I.   For injunctive relief compelling Defendant to cease representing the Products as containing white chocolate;

J.   For an Order awarding Plaintiffs and members of the Class their reasonable attorneys' fees and expenses and costs of suit; and

K.   For such other and further relief as the Court deems just and proper.

1

## <u>DEMAND FOR TRIAL BY JURY</u>

2        Plaintiffs, individually and on behalf of all others similarly situated, hereby demand

3   a jury trial on all claims so triable.

4

5   DATED: August 13, 2018

6

7                                 **Respectfully submitted,**

8                                 */s/ C.K. Lee*

9                                 C.K. Lee, Esq.

10                                 */s/ David A. Makman*

11                                 David A. Makman, Esq.

12                                 *Attorneys for Plaintiffs and the Class*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28